The Seattle Police Department is investigating the death of a member of NHK's Seating of America, Inc.   He was a member of NHK's Seating of America, Inc. The next case is number 1617-16, Lear Corporation v. NHK Seating of America. Mr. Angliari. Thank you, Your Honors, and may it please the Court, Frank Angliari for Lear. This appeal, this actually consolidated set of appeals, arises from a number of IPRs with a number of decisions from the Board. We are appealing just three of those issues where we believe the Board overreached. The first two issues are claim construction issues where the Board construed a claim so broadly or a limitation so broadly that it failed to give any meaningful effect to that limitation. And the third appeal is a challenge on an obviousness holding where there was essentially a failure of proof, an undefined obviousness combination, and the art not supporting the arguments. Do these issues apply to all four patents, or are you going to distinguish among them? Sure. So the first issue, the 043 patent, which is appeal number 14-1202, has one issue, and that's a claim construction issue. It's concerning the claim phrase, headrest, pivotally attached with the seatback frame. The Board's construction imposed has two components for that limitation. The first component is a functional component, which is redundant with another limitation in the claim, and therefore adds nothing to the claim. And the second component is that the headrest and the seatback frame are merely linked via intervening structures. Linked via intervening structures doesn't really give any meaningful effect to the language headrest pivotally attached with the seatback frame, and therefore it's overly broad. We know this because the Board found anticipation based on a JP468 reference where the headrest is not attached with the seatback frame, but is instead attached with the floor. The JP468 reference expressly states that the headrest is attached with the floor member. It also states that it has an arm extending from the headrest that is in contact with the seatback frame. So it distinguishes between where it's attached and what it's in contact with. The only reason the Board was able to find that a headrest attached with the floor anticipates a headrest attached with the seatback frame is by this overarching argument. It's overly broad construction, which imposes really only one requirement, and that is that the headrest be linked via intervening structures with the frame. So by that, virtually anything in the car is linked via intervening structures. That doesn't really impose any reasonable meaning on a headrest pivotally attached with the seatback frame. So that's our one issue on the 043 Patent and Appeal Number 14-1202. But our construction basically was that the affirmative attachment be such that if you remove the seatback frame, the headrest comes along with it. That was our construction of attached with the seatback frame. The second appeal concerns two patents and two appeals, two IPRs. It's the 949 and 733 patents, and those are Appeal Numbers 14-1079 and 14-1026. Here again, we have a claim construction issue. The claim terms are first manner and second manner. This patent and these claims describe a structure, a guide member and a follower, that allow the headrest to move in two manners on an impact. The patent specification, every time it talks about first and second manners, talks about those manners having first and second trajectories and first and second forward velocities. It also makes it very clear that a simple arcuate trajectory is one manner in one trajectory. In other words, there's no instance in the patent where they take a simple arcuate trajectory and carve it up into pieces and then say, this piece is the first manner, this piece is the second manner, this piece is the third manner. Instead, if you have a continuous arcuate trajectory, it's one manner, one trajectory, one forward velocity. The board in these two appeals considered four different items of prior art. None of them disclosed anything more than a simple arcuate trajectory, but the board still found two manners. So the board carved up that trajectory, perhaps into an upward motion and a forward motion, or different pieces. And that is too broad. Since the patent makes clear that a manner, a simple arcuate trajectory, is one manner, if you read first manner and second manner on a simple arcuate trajectory, you have essentially read second manner out of the claims. But you fail to give any meaningful effect. The board reached this result by construing first and second manners as in any two ways. Ways doesn't really add much to manner, it's just a different word. But then when they took the word way, that's a word that's detached from the specification. And the specification of manner includes a simple arcuate trajectory. But way, once they untethered it with the word way, they were able to say a way is any component of motion. So really, anything other than purely vertical or purely horizontal, in the view of the board in NHK, is two ways. All motion in reality, in that context, has two ways. There's no example, there's no evidence in this record of any sort of purely horizontal or purely vertical motion in the context of a seatback frame. So therefore, the board's two ways construction now reads on any motion, and therefore reads the second manner out of the claims. The board's construction is also inherently ambiguous, because under the board's way construction, where a way or a manner is any piece of any motion, you can take an arcuate trajectory and cut it into an infinite number of little pieces. No one knows where the first piece stops, the second piece ends. So really, for three reasons, we believe the board's first and second manner construction, as any two ways, is wrong. Number one, it's inconsistent with the specification, which makes clear that a simple arcuate trajectory is one manner. Two, it reads second manner out of the claims, and three, it's fatally ambiguous. The third issue that we raise on appeal concerns the 955 patent, which is appeal number 14-1101. And in the claim here, the claim requires that a first velocity is greater than a second forward velocity. The board found obviousness on two grounds for this claim. It had different primary references and the same secondary reference. So the primary references, in one case you had a Nakano reference plus a Kagi reference, and in the second case you had a Shubring reference plus Kagi. So in both cases, the Kagi reference was the secondary reference. The board found obviousness saying that if you apply the Kagi teachings to either the Shubring or Nakano, the primary reference, apply the Kagi teachings to slow down the final movement of the headrest, e.g. with a spring, linkage, or bumper, then you get the claim. So they're saying, take the primary reference, apply Kagi to slow it down at the end with a spring, linkage, or bumper, and you get the claim, which says a first forward velocity is greater than a second. The problem is, Kagi doesn't say anything, the secondary reference doesn't say anything about using a spring, linkage, or bumper. None of the art talks about that. Kagi teaches a trajectory, again it's a simple arcuate trajectory, that moves more horizontally toward the driver initially and then more vertically toward the end. Kagi talks about moving the headrest quickly toward the driver in the beginning and then changes the trajectory so that the relative velocity between the headrest and the driver is relatively less as you get toward the end of that trajectory. There's nothing in the obviousness combination that they've put forth, which is, again, using Kagi to teach adding a spring. They give us nothing specific on this supposed combination. I'm not sure I understand your question, Your Honor, but I think the answer is yes, in the sense that the board said, or certainly NHK argues, that Kagi's velocity is changing over the course of time. So the problem with that, Your Honor, is Kagi's a secondary reference, and it achieves that function where the instantaneous speed slows down through a trajectory, a specific trajectory. The primary references have a different specific trajectory, and there's nothing in the record teaching how you would modify the trajectory of the primary references to get the benefit that Kagi teaches. There's no specific combination or modification even articulated in this record. The argument from NHK in the findings of the board, where you would take the primary reference, which has, in a sense, the wrong trajectory for this claim, take Kagi and then jump to using a spring or damper. There's nothing about modifying the primary trajectory to get the Kagi trajectory. There's nothing in the record on that, and that's what they need. If they're going to say that the primary reference should be modified in accordance with Kagi, then they've got to come up with evidence that teaches how you'd do that. The only thing that they've put forth is a conclusory assertion of adding a spring, linkage, or damper. No one's explained to us where that spring, linkage, or bumper is going to be placed, how the first reference is going to be modified. Kagi doesn't teach anything, and in addition to this failure of proof, the fundamental problem is the undisputed testimony from our expert, is that if you just added a spring, linkage, or damper at the end of the motion, you would slow down the overall activation time. And the whole point of these headrests is to activate as quickly as possible. The whole point is to get the headrest to the head as soon as you can. There's no evidence that anyone in the art would ever want to slow that down. Now, we were criticized for not proving that their modification wouldn't work, but it's not our burden. The undisputed evidence is that you wouldn't want to slow the headrest down, and by slow it down, what I mean is the overall activation time. Kagi changes the trajectory so that the relative speed is slower on impact, but the overall actuation time remains quick, because Kagi teaches moving it quickly at the beginning, then more slowly at the end. If they want to take that teaching, they have to explain to us how they're going to modify the primary reference to get that quick speed in the beginning. They can't just say, we're going to slow it down at the end and still get the headrest to the occupant's head fast enough. There's nothing in the record on this. It's a very conclusory assertion of obviousness, which is why we say the error here is essentially a failure of proof. Okay. Let's hear from the other side, and we'll take this up further on rebuttal. Good morning, Your Honors. May it please the Court, my name is John Rabinow with Chigrou Mine. I'm here on behalf of the appellee. There is some commonality in that the appeals for the 043 patent, the 949 and 733 patent are purely claim construction issues. There is not dispute that under the board's construction, the prior art meets those claim constructions. The last patent, the 955, is a factual issue on what is taught in the prior art. So there's a little bit of common thread, and I'd like to start with the 043, the claim construction issue there. First, I should note that in Lear's brief, they point to what they say is the claim construction on page 19 of their brief. That is not the actual claim construction. That's not the interpretation by the board. The board is on page 12 of the decision, and the actual interpretation is, we broadly interpret and interpret the claim construction as a headrest pivotally attached with the seatback frame in claims 2 and 57, as referring to headrests that are pivotally attached with the seatback frame via other structures. The board reached this conclusion because both of the embodiments in the specification had intervening structures between the headrest and the seatback frame. So there had to be an allowance for intervening structures, and that's really the dispute between the parties of the claim construction. The board also noted that there's another claim, other claims that say, or other terms, pivotally mounted to, for example, the impact target is claimed to be pivotally mounted to the seatback frame. When the board looked at the specification, it saw a direct connection, physically joined to the frame, and interpreted pivotally mounted to as requiring a direct join between the impact target and the frame. But the board found that the patentee was using this pivotally attached with phrase to be broader to allow for these intervening structures. Let's focus on the 955. Certainly. Because I think that there are some unanswered issues, and I'd be interested in your response. Of course. The main issue is the teachings of Kage. It's undisputed that Kage teaches expressly, slow the headrest down at the end of the deployment, so that you don't hit the occupant's head too hard. That's exactly what the 955 teaches, and the reasons, they have the same reasons, the same goal. These are method claims. There's no structural requirement for how you slow it down, and the board found that, first of all, both experts agreed that one of ordinary skill would understand how to use bumpers, springs, and other components to affect the movement and slow down a linkage at the end of deployment. The board used that and said, if you take Nakano or Shubring, the two primary references, which are, the board found that both have two trajectories, and then you read Kage that says, slow down at the end of the deployment so that you don't hit the occupant's head too hard. The board found from the expert's admissions that one of skill would know to use a spring on a linkage somewhere. It does not matter, it's not claimed, to effectuate that slowing down, and that was the basis for the combination. So there was evidence to support the combination of the general teaching of slowing down and how to do it in the primary references. If there are questions on 955, I can answer them, or if not, I can move to the other. Well, they do say that these generalizations are not sufficiently specific in the prior art. There was nothing in the claim to require a specific structure for how to slow it down, only that you slow it down as you get closer to the head in the second part of the movement. So how you actually do that, as the board cited the Supreme Court, you don't need an automaton to do the combinations in a specific way, but the tools and the things to slow down a deployment, like a bumper or a spring, were well-known, obvious tools. And that was undisputed between the two experts. The one point that counsel mentioned, the expert for Lear testified in his declaration that nobody would want to slow down a headrest in its deployment. It would take too long. The board found that that was extrinsic and contradicted by the express teachings of Kage. Okay, continue. For the 949 and 733 patent, the issue is whether manner should be limited to trajectory. And Lear's brief says they're not proposing to limit manner to trajectory, only that manner should include trajectory. And I think when you read the entire brief, you realize that they're actually trying to limit manner to trajectory, because when Lear tries to distinguish the references from the first and second manner requirement, they say the following. There's no evidence that Wicklund, Viano, Nakano, and Kage disclose anything more than a movement along a single arcuate trajectory, which the patents describe as one manner. So they are conflating the two. They're trying to limit manner to trajectory and require two specific trajectories. The board found two main categories of intrinsic evidence to support their definition of manner. And one was in the specification, a quote that says, as long as at least one of the first forward velocity and first trajectory is different than one of a second forward velocity and second trajectory, movement in first and second manners, variable movement, has been achieved. So the board recognized that that meant if you have two trajectories, they could be the same, and as long as your velocity changes, then you have two manners. So two trajectories that are the same, that's one trajectory. So that was supporting the specification for that. There was also an admission by Lear's expert that one of the embodiments in the specification moved in a single trajectory, but had two manners. And then there was the file history of the related patent, the 955, which Lear's brief says that the board discounted it. That's not accurate. That's in appendix 38. The board expressly addressed the file history of the 955 as persuasive on this point. And that's where Lear had a claim that said first and second manners in the 955. The board, the examiner rejected that claim based on, in fact, the 043 Viano patent, which just moves in a single arc. And Lear made the same arguments that they're making now initially, but then acquiesced and amended the claims to obtain an allowance, and the examiner found that amendment to be the reasons for allowance. And the amendment was, I'll read from the examiner's reasons for allowance, independence claim 1 and 16 are allowable because they recite a headrest that move at a first trajectory and at a second trajectory. So Lear acquiesced to the examiner's point in that case that two manners is disclosed by the Viano 043 patent and that manner was not the same thing as trajectory. So all of that intrinsic evidence is what the board relied on in interpreting manner to be two different ways. And on a final point, even if the board were to limit manner to trajectories, the board found at appendix 144 that Nakano has two trajectories, two distinct trajectories. So unless there are questions on the 949 and 733, that's all I have. Okay. Thank you. Thank you. Thank you. Mr. Angliari. Just a few quick points. NHK said that we're not using the board's construction for the 043 patent. And we are quoting the board's opinion from appendix 19 to 20 where they talk about what, quote, pivotally attached with encompasses. It encompasses a relationship between the headrest and seatback frame that involves the headrest being functionally linked by intervening structures to the seatback frame so that the headrest rotates forward in response to a rearward force applied to an impact target. So they're saying that it encompasses that means it could, in theory, encompass more. We're saying that what that piece right there, which they say it encompasses, is too broad in the sense that it essentially broadens the claim language to merely require intervening structures. So their claim construction clearly covers what we say it covers. That's exactly what the board said. With respect to the 955 patent, there was a discussion about whether the Coggy does teach how it teaches using a different trajectory. And there's nothing in the record that explains how one would apply that teaching of a different trajectory to the primary references. That's why there's a failure of proof. No, but they said that you didn't teach how either. We didn't teach how either. We did teach how, Your Honor. We taught, we teach a structure inside. The headrest has some arms that extend. And the arms have a, there's a sort of a channel that they run through in our specification. It's shown in our blue brief at page 25, figure 2 of the 949 patent. And it teaches how that guide and follower, how they interact in a way that So that's how, we do in fact teach changing the trajectory to achieve this function. Coggy teaches a single trajectory that is instantaneously more toward the driver at the beginning and less. Their primary references teach the wrong trajectory. The primary reference is teaching moving upward initially and then toward the driver at the end. That's the wrong thing. You hit the driver at maximum instantaneous speed. And there's no teaching in this record, nothing from their expert, nothing from the art that teaches how you change those primary references to get from what is essentially the wrong trajectory in the context of this claim to the right trajectory. They just say that people with skill in the art know about springs and dampers, but that's not, that's not in Coggy. And no one said how you'd change the Nakano and Shu-Ring trajectories to get the Coggy trajectory. With respect to the 949 patent, the other arguments that council raised are addressed in our brief, and so I won't repeat them here unless the court has questions. Thank you. Thank you both. The case is taken under submission. That concludes the arguments for this morning. All rise. The article of court is adjourned from day to day.